**FILED**

NOV - 6 2007

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

## IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF COLUMBIA

**JEROME CORSI**
41 Copeland Road,
Denville, NJ 07834,

**WILLIAM D. GERTZ**
811 Overfield Court,
Bowie, MD 20715,

**ROBERT B. PATTERSON**
139 Jamison Court,
Simi Valley, CA 93065,

**JOEL MOWBRAY**
331 W. 57th Street, #104
New York, NY 10019

and,

**RICHARD MINITER,**
2420 South Queen Street,
Arlington, VA 22202,
                         Plaintiffs,

v.

**EAGLE PUBLISHING, INC.**
One Massachusetts Avenue, NW
Washington, D.C. 20001
**Serve:** Corporate Services Co.
         1100 New York Avenue, NW
         West Tower Suite 500
         Washington, D.C. 20005
                         Defendant.

)
)
)
)
)
)
)
)
)
)

Case: 1:07-cv-02004
Assigned To : Huvelle, Ellen S.
Assign. Date : 11/6/2007
Description: General Civil

*JURY ACTION*

)
)
)
)
)        **JURY DEMAND**
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

### COMPLAINT

COME NOW, Plaintiffs JEROME CORSI, WILLIAM D. GERTZ , ROBERT B.

PATTERSON, JOEL MOWBRAY and RICHARD MINITER (collectively, "AUTHORS"), by

counsel, John M. Shoreman and Athan T. Tsimpedes, and in complaint against EAGLE

PUBLISHING, INC. ("EAGLE") states as follows:

## NATURE OF THE CASE

This action is brought by AUTHORS against EAGLE, which is the parent company of their book publisher REGNERY PUBLISHING, INC. ("REGNERY"). AUTHORS allege that EAGLE orchestrates and participates in a fraudulent, deceptively-concealed, and self-dealing scheme to divert book sales away from retail outlets and to wholly owned subsidiary organizations within the EAGLE conglomerate. Under this scheme, books written by AUTHORS and published by REGNERY are sold or transferred to affiliated organizations within the EAGLE conglomerate for no charge, or for a substantially reduced charge, in order to avoid or substantially reduce royalty payments to AUTHORS. The scheme is continuing in nature. As a result of the fraudulent scheme, EAGLE has benefited and been unjustly enriched well in excess of one million dollars ($1 million) to the detriment of the AUTHORS.

## JURISDICTION AND VENUE

1. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §1332.

2. The amount in controversy in this matter exceeds $75,000.00, exclusive of interest and costs.

3. Venue is appropriate in this Court pursuant to 28 U.S.C. §1391, *et seq.*

## THE PARTIES

4. Plaintiff JEROME CORSI is a citizen of New Jersey.

5. Plaintiff WILLIAM D. GERTZ is a citizen of Maryland.

6. Plaintiff ROBERT B. PATTERSON is a citizen of California.

7. Plaintiff JOEL MOWBRAY is a citizen of New York.

8. Plaintiff RICHARD MINITER is a citizen of Virginia.

9. Defendant EAGLE is incorporated under the laws of the District of Columbia. Its

2

principal offices are located within the District of Columbia.

## BACKGROUND FACTS

10.    REGNERY is a wholly owned subsidiary of EAGLE, which calls itself "America's leading conservative publishing company." EAGLE has developed a business model that integrates among its subsidiary organizations the functions of publisher and distributor.

11.    REGNERY's publications are marketed and sold by sister companies within the EAGLE conglomerate. Eagle Book Clubs, Inc. (wholly-owned by EAGLE) operates the Conservative Book Club ("CBC"). CBC has a membership of over 80,000 conservative readers. REGNERY sells first edition books to CBC at, below, or only marginally above, its own cost of publication. CBC substantially reduces royalties to AUTHORS. There is no honest negotiation in the sale of books from REGNERY to CBC. CBC purchases books from REGNERY for less than market price and/or is the sole book club selling certain REGNERY books. There is no arms-length, bidding competition for the purchase of REGNERY's books between CBC and other, unaffiliated, book clubs.

12.    In some cases CBC, or another EAGLE-owned entity, has actually offered REGNERY's new books to its membership prior to the official release date.

13.    The EAGLE conglomerate realizes greater profits from the sale of REGNERY's books by CBC than it does from sales in retail bookstores because, in part, little or no royalty is paid to REGNERY's authors and no promotional payments to retail bookstores are necessary. Nor does Regnery have to share revenue with the bookstores on sales made through CBC. This cannibalizes sales for the bookstores, where authors would receive the highest royalty, by steering sales to book clubs owned by Eagle, where the authors would receive almost no royalties.

14.    Conservative readers are the target audience of REGNERY's authors, as well as the target audience for EAGLE's direct marketing; CBC's often-discounted membership sales substantially detract from potential sales at the catalog list price in retail bookstores. EAGLE's interest in maximizing profits through CBC book sales is antithetical to the interest of REGNERY's authors in selling books at the catalog list price and thus maximizing royalties. EAGLE's self-dealing results in a direct financial injury to AUTHORS, and is contrary to the clear intent of the parties to REGNERY's publishing contracts.

15.    EAGLE also distributes REGNERY's books by direct mail and over the Internet. And, again, AUTHORS' expected royalties are substantially reduced or eliminated as a result. Other EAGLE subsidiaries publish periodicals that, like CBC, are geared to a conservative reading audience. These include magazines such as *Human Events* and the *Evans-Novak Political Report*.

16.    REGNERY's first edition books are offered as free gifts to new subscribers of EAGLE's periodicals. REGNERY supplies the new books to its affiliated publisher at or below cost, or for free, and EAGLE gains a new annual subscriber. EAGLE then maximizes the value of that subscription through its List Division, which rents the "highly-responsive political and financial customer lists" developed in its operations.

17.    EAGLE also controls and directs the donation of REGNERY books to non-profit entities such as the Eagle Foundation and CPAC. While Eagle may realize tax and other benefits from such donations, AUTHORS receive de minimus or no royalty compensation from EAGLE's transaction.

18.    While a model of efficiency, EAGLE's vertically integrated business model exploits, manipulates and defrauds the AUTHORS. The web of internecine, self-dealing transactions is

purposefully designed to divert sales away from the retail book trade, and is intentionally

concealed by EAGLE and its agents. The AUTHOR's reasonable expectation that REGNERY,

as a fiduciary, would promote retail sales at the catalog list price in order to maximize royalties,

and concurrently enhance the AUTHORS' ability to repay advanced royalties promptly, is

frustrated.

19.     Each of the AUTHORS entered into publishing contracts with REGNERY. Pursuant to

the contracts REGNERY agreed to pay AUTHORS royalties of ten percent (10%) of its catalog

retail price for the first 5,000 hardback books to the book trade, twelve and one-half percent

(12½%) for the second 5,000 copies and fifteen percent (15%) thereafter. CORSI earned half the

percentage at each threshold. Lesser amounts were paid for sales of paperback editions.

20.     The self-dealing transactions engaged in by EAGLE's subsidiaries are treated as sales to

"additional markets." Royalties paid to AUTHORS for sales to "additional markets" are treated

under a separate clause in the Publishing Contracts:

> Notwithstanding paragraph 2(b) or 2(c) hereof, on sales to additional markets outside
> regular bookstores or outside of the book trade, by means of direct mail circulation
> and coupon advertisements in newspapers or other periodicals and on premium sales
> and sales to organizations outside the book trade for resale or promotional use, and
> on the sale of books to book clubs Publisher shall pay Author ten percent (10%) of
> the amount received by the Publisher in excess of its manufacturing costs and
> returns.

21.     The "additional markets" clause is CORSI's June 2004 Contract provides for a

royalty of five percent (5%) of the amount received by REGNERY.

22.     The "additional markets" clauses in two of the three GERTZ Publishing Contracts, and in one

of MINITER's Publishing Contracts, differ in that they provide for prior approval of promotional

sales and giveaways(?), though EAGLE chose uniformly to ignore that condition.

23.     Rather than promoting retail sales at the catalog list price in bookstores, REGNERY, at

EAGLE's direction, funnels books that otherwise would be available for retail sale to its EAGLE affiliates under the "additional markets" clause of the AUTHORS' Publishing Contracts. Rather than 10 to 15% of the catalog list price, GERTZ, PATTERSON, MOWBRAY and MINITER receive only 10% of the amount received over REGNERY's cost, which, given the lack of arms-length negotiation in REGNERY's "additional market" sales, is little or nothing at all. CORSI realizes five percent (5%) of what REGNERY receives on paper from EAGLE, less costs. The "price" charged by REGNERY to EAGLE subsidiaries is an arbitrary and capricious number chosen through self-dealing by EAGLE. The diversion of books away from retail sale is deliberately concealed from AUTHORS by EAGLE and its agents.

24.     REGNERY, at EAGLE's direction, undertakes to minimize retail sales through traditional channels in the book trade, while maximizing sales to "additional" markets through the direct marketing techniques of its EAGLE affiliates, which specifically target the conservative readers most likely to purchase books by the AUTHORS. Consequently, in addition to an immediate loss of royalty income, the AUTHORS suffer future economic injury and reputational damages. Non-retail sales are not included in industry-wide sales reports, such as Book Scan.

25.     The amount that another publisher is willing to advance for a book by a former EAGLE author, and the marketing budget it is willing to commit to support the authors' work, is determined by the industry-wide retail sales record generated from sales of the REGNERY books. Those sales figures available to other publishers are artificially depressed due to the number of books channeled by EAGLE to its subsidiaries, in less than arms-length transactions, for purposes of direct marketing. The diversion of book sales away from retail outlets distorts the AUTHORS' sales records since a significant number of books that were actually sold are not reported to the rest of the publishing industry. Higher sales of previous books commonly results

6

in larger marketing budgets for future books. Typically, the higher the marketing budget for a book, the greater the retail sales, and thus the greater the royalties paid to an author. Therefore, future publishers deciding to spend less on marketing because AUTHORS' sales figures for REGNERY-published books are artificially low results in lower sales, and consequently, lower royalties for AUTHORS. Thus, EAGLE's self-dealing and diversion of books away from retail sales has continuing adverse effects on AUTHORS' commercial and professional reputations.

### COUNT ONE
### Fraud

26.    Plaintiffs reallege paragraphs 1 through 25 of the Complaint as set forth in full.

27.    EAGLE participates in a scheme to defraud the AUTHORS by its conduct in diverting REGNERY book sales away from retail outlets and to its own subsidiaries in self-dealing transactions.

28.    As a direct and proximate cause of EAGLE's participation and concealment of the fraudulent scheme to deny AUTHORS their lawful royalty payments, Plaintiffs have been damaged in an amount presently unknown, but in excess of the jurisdictional minimum of this Court.

29.    Upon information and belief, EAGLE engaged in the fraudulent scheme described above willfully and knowingly with the intent to deceive Plaintiffs. EAGLE ratified the false statements and concealments of its subsidiaries. Accordingly, Plaintiffs are entitled to punitive and exemplary damages against EAGLE.

30.    Upon information and belief, EAGLE has acted with oppression, fraud and malice, and has deliberately caused and intended to cause great economic harm to Plaintiffs with full knowledge of the wrongfulness and unjustifiable nature of its conduct. Therefore, Plaintiffs should be awarded punitive and exemplary damages sufficient to punish Defendant for engaging

7

in this conduct and to deter similar conduct on its part in the future.

## COUNT TWO
### Inducement to Breach of Contract

31.    Plaintiffs reallege paragraphs 1 through 30 of this Complaint as set forth in full.

32.    EAGLE induced, forced and required its wholly owned subsidiary REGNERY to violate

the terms of the AUTHORS' Publishing Contracts by diverting books away from retail sales in

concealed, self-dealing transactions with affiliates.

33.    As a direct and proximate cause of EAGLE's inducement, REGNERY breached the

AUTHORS' Publishing Contracts by diverting books away from retail sales in self-dealing

transactions with affiliates.

## COUNT THREE
### Interference with Contractual Relations

34.    Plaintiffs reallege paragraphs 1 through 33 of this Complaint as set forth in full.

35.    EAGLE wrongfully interfered with the contractual relationship between REGNERY and

the AUTHORS by requiring REGNERY to divert books from retail sales in concealed, self-

dealing transactions with affiliates in order to maximize profits to the EAGLE conglomerate.

36.    EAGLE's interference in the contractual relationship between REGNERY and

AUTHORS frustrated the purposes of the Publishing Contracts and denied AUTHORS their

legitimate and expected benefits.

## COUNT FOUR
### Interference with Prospective Business Advantage

37.    Plaintiffs reallege paragraphs 1 through 36 of this Complaint as set forth in full.

38.    EAGLE participates in a concealed scheme to defraud the AUTHORS by its conduct in

diverting REGNERY book sales away from retail outlets and to its own subsidiaries in self-

dealing transactions.

8

39.    As a direct and proximate cause of EAGLE's participation and concealment in such

scheme, the AUTHOR's retail book sales are artificially reduced resulting in damage to their

professional reputations and interfering in prospective business relationships with other

publishers.

**COUNT FIVE**
**Unjust Enrichment**

40.    Plaintiffs reallege paragraphs 1 through 39 of the Complaint as set forth in full.

41.    A benefit has been conferred upon EAGLE by the AUTHORS.

42.    EAGLE has knowledge of the benefit.

43.    EAGLE retained or accepted the benefit under such circumstances as to make it

inequitable for it to retain the benefit without payment of its value to AUTHORS.

**COUNT SIX**
**Accounting**

44.    Plaintiffs reallege paragraphs I through 43 of the Complaint as set forth in full.

45.    The business relationship between the EAGLE conglomerate and AUTHORS and/or the

circumstances regarding that business relationship, coupled with the missing and/or unpaid

royalties makes this case appropriate for an accounting.

46.    The amount of money due from the EAGLE conglomerate to each Plaintiff is unknown

and cannot be ascertained without an accounting of the receipts and disbursements of the

aforementioned transactions.

**COUNT SEVEN**
**Unfair Trade Practices**

47.    Plaintiffs reallege paragraphs I through 46 of the Complaint as set forth in full.

48.    EAGLE engaged in unfair competition or unfair or deceptive acts or practices or made

false representations in violation of D.C. Code § 28-3901, *et seq.*

9

## COUNT EIGHT
### Damage to Commercial Reputation

49.     Plaintiffs reallege paragraphs I through 48 of the Complaint as set forth in full.

50.     EAGLE's intentional diversion of book sales away from retail outlets is the direct and proximate cause of injury to the AUTHORS' commercial and professional reputations and to their respective standing in the literary community.

51.     AUTHORS rely on an industry-wide measure of retail book sales to negotiate advantageous terms in subsequent book contracts.  As EAGLE is fully aware, AUTHORS' commercial reputations are built upon and maintained by measurable retail book sales.

## PRAYER FOR RELIEF APPLICABLE TO ALL COUNTS

WHEREFORE, Plaintiffs respectfully request that the Court enter a judgment against Defendant and grant the following relief:

A.     An accounting to be conducted to determine the profits, sales and royalties between each Plaintiff and Defendant regarding the subject matter herein;

B.     Constructive Trust imposed upon the assets of Defendant for the amounts determined Plaintiffs are entitled;

C.     Judgment for plaintiffs for:

    1.     Compensatory damages according to proof;
    2.     Consequential or Special Damages according to proof;
    3.     Punitive damages;
    4.     Disgorge from Defendant all monies received unjustly from its wrongful conduct;
    5.     Award attorneys' fees and costs; and,
    6.     Grant such other and further relief as the Court may deem just.

## DEMAND FOR JURY

Plaintiffs demand trial by jury on all issues.

                                        Respectfully submitted,

                                        _____
                                        John M. Shoreman (Bar No. 407626)
                                        McFadden & Shoreman
                                        1420 New York Avenue, NW
                                        7th Floor
                                        Washington, D.C.  20005
                                        Tel. 202-638-2100
                                        Fax 202-628-0735
                                        Email: mstlaw@erols.com

                                        *Counsel for the Plaintiffs*

COUNSEL:
Athan T. Tsimpedes
1420 New York Avenue, NW
7th Floor
Washington, DC 20005
Tel. 202-638-2100
Fax. 202-449-3499
Email: atsimpedes@comcast.net

E 12- 2004
ESH

# CIVIL COVER SHEET

JS-44
(Rev.1/05 DC)

| I (a) PLAINTIFFS | DEFENDANTS |
|---|---|
| Jerome Corsi, William D. Gertz, Robert Patterson, Joel Mowbray and Richard Miniter | Eagle Publishing, Inc. |

**(b)** COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF    Morris County, NJ
(EXCEPT IN U.S. PLAINTIFF CASES)

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT
(IN U.S. PLAINTIFF CASES ONLY)    District of Columbia
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED

**(c)** ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)

John M. Shoreman
McFadden & Shoreman
1420 New York Ave., NW, Suite 700
Washington, D.C. 20005
(202) 638-2100    email: mstlaw@erols.com

Case: 1:07-cv-02004
Assigned To : Huvelle, Ellen S.
Assign. Date : 11/6/2007
Description: General Civil

JURY ACTION

## II. BASIS OF JURISDICTION
(PLACE AN x IN ONE BOX ONLY)

○ 1 U.S. Government Plaintiff
○ 2 U.S. Government Defendant
○ 3 Federal Question (U.S. Government Not a Party)
◉ 4 Diversity (Indicate Citizenship of Parties in item III)

## III CITIZENSHIP OF PRINCIPAL PARTIES (PLACE AN x IN ONE BOX FOR PLAINTIFF AND ONE BOX FOR DEFENDANT) **FOR DIVERSITY CASES ONLY!**

| | PTF | DFT | | PTF | DFT |
|---|---|---|---|---|---|
| Citizen of this State | ○ 1 | ○ 1 | Incorporated or Principal Place of Business in This State | ◉ 4 | ○ 4 |
| Citizen of Another State | ○ 2 | ◉ 2 | Incorporated and Principal Place of Business in Another State | ○ 5 | ○ 5 |
| Citizen or Subject of a Foreign Country | ○ 3 | ○ 3 | Foreign Nation | ○ 6 | ○ 6 |

## IV. CASE ASSIGNMENT AND NATURE OF SUIT
(Place a X in one category, A-N, that best represents your cause of action and **one** in a corresponding Nature of Suit)

○ **A. Antitrust**

☐ 410 Antitrust

○ **B. Personal Injury/ Malpractice**

☐ 310 Airplane
☐ 315 Airplane Product Liability
☐ 320 Assault, Libel & Slander
☐ 330 Federal Employers Liability
☐ 340 Marine
☐ 345 Marine Product Liability
☐ 350 Motor Vehicle
☐ 355 Motor Vehicle Product Liability
☐ 360 Other Personal Injury
☐ 362 Medical Malpractice
☐ 365 Product Liability
☐ 368 Asbestos Product Liability

○ **C. Administrative Agency Review**

☐ 151 Medicare Act

**Social Security:**
☐ 861 HIA ((1395ff)
☐ 862 Black Lung (923)
☐ 863 DIWC/DIWW (405(g)
☐ 864 SSID Title XVI
☐ 865 RSI (405(g)
**Other Statutes**
☐ 891 Agricultural Acts
☐ 892 Economic Stabilization Act
☐ 893 Environmental Matters
☐ 894 Energy Allocation Act
☐ 890 Other Statutory Actions (If Administrative Agency is Involved)

○ **D. Temporary Restraining Order/Preliminary Injunction**

Any nature of suit from any category may be selected for this category of case assignment.

*(If Antitrust, then A governs)*

◉ **E. General Civil (Other)**    OR    ○ **F. Pro Se General Civil**

**Real Property**
☐ 210 Land Condemnation
☐ 220 Foreclosure
☐ 230 Rent, Lease & Ejectment
☐ 240 Torts to Land
☐ 245 Tort Product Liability
☐ 290 All Other Real Property

**Personal Property**
☒ 370 Other Fraud
☐ 371 Truth in Lending
☐ 380 Other Personal Property Damage
☐ 385 Property Damage Product Liability

**Bankruptcy**
☐ 422 Appeal 28 USC 158
☐ 423 Withdrawal 28 USC 157

**Prisoner Petitions**
☐ 535 Death Penalty
☐ 540 Mandamus & Other
☐ 550 Civil Rights
☐ 555 Prison Condition

**Property Rights**
☐ 820 Copyrights
☐ 830 Patent
☐ 840 Trademark

**Federal Tax Suits**
☐ 870 Taxes (US plaintiff or defendant
☐ 871 IRS-Third Party 26 USC 7609

**Forfeiture/Penalty**
☐ 610 Agriculture
☐ 620 Other Food &Drug
☐ 625 Drug Related Seizure of Property 21 USC 881
☐ 630 Liquor Laws
☐ 640 RR & Truck
☐ 650 Airline Regs
☐ 660 Occupational Safety/Health
☐ 690 Other

**Other Statutes**
☐ 400 State Reapportionment
☐ 430 Banks & Banking
☐ 450 Commerce/ICC Rates/etc.
☐ 460 Deportation

☐ 470 Racketeer Influenced & Corrupt Organizations
☐ 480 Consumer Credit
☐ 490 Cable/Satellite TV
☐ 810 Selective Service
☐ 850 Securities/Commodities/ Exchange
☐ 875 Customer Challenge 12 USC 3410
☐ 900 Appeal of fee determination under equal access to Justice
☐ 950 Constitutionality of State Statutes
☐ 890 Other Statutory Actions (if not administrative agency review or Privacy Act

| O  *G. Habeas Corpus/ 2255* | O  *H. Employment Discrimination* | O  *I. FOIA/PRIVACY ACT* | O  *J. Student Loan* |
|---|---|---|---|
| ☐ **530 Habeas Corpus-General**<br>☐ **510 Motion/Vacate Sentence** | ☐ **442 Civil Rights-Employment**<br>(criteria: race, gender/sex, national origin, discrimination, disability age, religion, retaliation)<br><br>*(If pro se, select this deck)* | ☐ **895 Freedom of Information Act**<br>☐ **890 Other Statutory Actions (if Privacy Act)**<br><br>*(If pro se, select this deck)* | ☐ **152 Recovery of Defaulted Student Loans (excluding veterans)** |

| O  *K. Labor/ERISA (non-employment)* | O  *L. Other Civil Rights (non-employment)* | O  *M. Contract* | O  *N. Three-Judge Court* |
|---|---|---|---|
| ☐ **710 Fair Labor Standards Act**<br>☐ **720 Labor/Mgmt. Relations**<br>☐ **730 Labor/Mgmt. Reporting & Disclosure Act**<br>☐ **740 Labor Railway Act**<br>☐ **790 Other Labor Litigation**<br>☐ **791 Empl. Ret. Inc. Security Act** | ☐ **441 Voting (if not Voting Rights Act)**<br>☐ **443 Housing/Accommodations**<br>☐ **444 Welfare**<br>☐ **440 Other Civil Rights**<br>☐ **445 American w/Disabilities-Employment**<br>☐ **446 Americans w/Disabilities-Other** | ☐ **110 Insurance**<br>☐ **120 Marine**<br>☐ **130 Miller Act**<br>☐ **140 Negotiable Instrument**<br>☐ **150 Recovery of Overpayment & Enforcement of Judgment**<br>☐ **153 Recovery of Overpayment of Veteran's Benefits**<br>☐ **160 Stockholder's Suits**<br>☐ **190 Other Contracts**<br>☐ **195 Contract Product Liability**<br>☐ **196 Franchise** | ☐ **441 Civil Rights-Voting (if Voting Rights Act)** |

**V. ORIGIN**

⊙ 1 Original Proceeding  O 2 Removed from State Court  O 3 Remanded from Appellate Court  O 4 Reinstated or Reopened  O 5 Transferred from another district (specify)  O 6 Multi district Litigation  O 7 Appeal to District Judge from Mag. Judge

**VI. CAUSE OF ACTION** (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE.)

28 U.S.C. Section 1332 - Fraudulent scheme to reduce royalties owed to Plaintiffs thru self-dealing transactions among Defendants' subsidiaries

**VII. REQUESTED IN COMPLAINT**   ☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23   **DEMAND $** 1,000,000.00   Check YES only if demanded in complaint
**JURY DEMAND:**   YES ☒   NO ☐

**VIII. RELATED CASE(S) IF ANY**   (See instruction)   YES ☐   NO ☒   If yes, please complete related case form.

DATE  11/6/07   SIGNATURE OF ATTORNEY OF RECORD  _(signature)_

**INSTRUCTIONS FOR COMPLETING CIVIL COVER SHEET JS-44**
Authority for Civil Cover Sheet

The **JS-44** civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. Listed below are tips for completing the civil cover sheet. These tips coincide with the Roman Numerals on the Cover Sheet.

I.    COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF/DEFENDANT (b) County of residence: Use 11001 to indicate plaintiff is resident of Washington, D.C.; 88888 if plaintiff is resident of the United States but not of Washington, D.C., and 99999 if plaintiff is outside the United States.

III.   CITIZENSHIP OF PRINCIPAL PARTIES: This section is completed only if diversity of citizenship was selected as the Basis of Jurisdiction under Section II.

IV.   CASE ASSIGNMENT AND NATURE OF SUIT: The assignment of a judge to your case will depend on the category you select that best represents the primary cause of action found in your complaint. You may select only one category. You must also select one corresponding nature of suit found under the category of case.

VI.   CAUSE OF ACTION: Cite the US Civil Statute under which you are filing and write a brief statement of the primary cause.

VIII.  RELATED CASES, IF ANY: If you indicated that there is a related case, you must complete a related case form, which may be obtained from the Clerk's Office.

Because of the need for accurate and complete information, you should ensure the accuracy of the information provided prior to signing the form.