UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| CORSI, et al., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 1:07-cv-02004-ESH |
| ) | |
| EAGLE PUBLISHING, INC. ) | |
| ) | |
| Defendant. ) | |
| ) | |

**REPLY TO OPPOSITION TO MOTION TO DISMISS**

Plaintiffs fail to identify any authority that defeats a finding that Regnery Publishing, Inc. is a necessary and indispensable party under Rule 19, Federal Rules of Civil Procedure, or that the Complaint fails to state a claim upon which relief may be granted under Rule 12(b)(6). Although plaintiffs may not agree with how Regnery marketed and sold their books, especially books sold to other entities owned by Eagle Publishing, Inc. (as Regnery was entitled to do under the publishing contracts), their displeasure alone does not overcome the substantial legal hurdles outlined in the Motion to Dismiss.

Plaintiffs do *not* dispute that the interests of Regnery are at stake in this litigation. They argue, however, in conclusory fashion, that Eagle can represent Regnery's interests, ignoring key facts such as that Regnery, not Eagle, is the contracting party with the Authors. A determination by a federal court concerning whether Regnery breached its contract (a finding that must be made for plaintiffs to succeed on many of their claims against Eagle) without affording Regnery the opportunity to defend against such claims is clearly prejudicial. The case law, even cases cited by plaintiffs, recognize that a party to the contract at issue is a "necessary" party. Plaintiffs fail to explain why Regnery is not an "indispensable" party. They merely argue that they are

entitled to an adequate remedy and yet they acknowledge that they can obtain relief against Regnery in arbitration, as one of the authors already is doing.

For three of the claims in the Complaint, plaintiffs do not dispute dismissal. For the five remaining claims, plaintiffs do not identify any authority that supports a finding that they have adequately stated those claims.

## I. THE CASE SHOULD BE DISMISSED BECAUSE REGNERY IS AN INDISPENSABLE PARTY

The Authors do not dispute Regnery's central involvement in each of the claims in this case and that Regnery's interests are at stake. Instead, the Authors side-step those issues, arguing that Eagle can represent Regnery's interests and they should not be denied an adequate forum to obtain a remedy. Neither of those arguments defeats a finding that Regnery is an indispensable party.

First, the claim that the interests of Regnery and Eagle are identical lacks any factual basis. The Authors do not explain how the interests are identical, and such a finding directly contradicts the undisputed facts in this case, such as that Regnery, not Eagle, has publishing contracts with the Authors and it is Regnery, not Eagle, that made representations to the Authors. *See* Compl. ¶ 19 ("Each of the Authors entered into publishing contracts with Regnery.") and Opp. to Mot. To Dismiss at 7 ("the Authors are not relying on direct misrepresentations from Eagle as the basis of this cause of action.").

*National Union Fire Insurance Co. v. Rite Aid of South Carolina, Inc.*, cited by plaintiffs, does not support a finding here that the interests of Regnery and Eagle are identical. In *National Union,* which was a declaratory judgment action between an insurance company, National Union, and a subsidiary of Rite Aid Corporation, the court affirmed a district court's finding that the case should be dismissed for failure to join a necessary and indispensable party. 210 F.3d

246, 254 (4th Cir. 2000).  The Fourth Circuit found that Rite Aid, the parent corporation, was a necessary and indispensable party, noting that it, not the subsidiary, was the contracting party with National Union.  *Id.* at 251.  The court explicitly *rejected* National Union's argument that the subsidiary could adequately represent the interests of its parent and act as its proxy.  *Id.*  Similarly, Regnery is the contracting party here and the Authors have not pointed to any facts to suggest that its interests can be represented by Eagle, a non-party to the contract.

Second, the Authors' concerns regarding potential remedy against Eagle does not entitle them to proceed in this case.  In *Wichita and Affiliated Tribes of Okahoma v. Hodel,* also relied upon by the Authors, the court specifically observes that although a court should be cautious,

> it is also important to realize that "[t]his does not mean that an action should proceed solely because the plaintiff otherwise would not have an adequate remedy, as this would be a misconstruction of the rule and contravene the established doctrine of indispensability."

788 F.2d 765, 777 (D.C. Cir. 1986) (quoting 3A *Moore's Federal Practice* ¶ 19.07-2[4], at 19-153 (1984)).  Here, the Authors have no relationship with Eagle – contractual, fiduciary, or otherwise.  They are free to pursue claims against Regnery, as plaintiff Miniter already has done.  They can be made whole in the arbitration proceeding.

Reliance on *Moses H. Cone Mem'l Hosp. v. Mercury Const. Corp.*, 460 U.S. 1 (1983), is misplaced.  In that case, the facts underlying the claims asserted by the plaintiff hospital against a construction company concerning delay and impact costs differed from facts concerning claims against the architect for indemnity for liability the hospital may have to the construction company.  *Id.* at 19-20.  In those circumstances, the Supreme Court concluded, the claims involving the construction company and the architect each could be addressed in a different forum, in piecemeal fashion.  *Id.* at 19-21.  The case did not address indispensability of a party

under Rule 19 and does not support piecemeal litigation where, as here, the underlying facts concerning the claims against Eagle and Regnery are the same.[1]

## II.    PLAINTIFFS HAVE FAILED TO STATE A CLAIM

The Authors do not dispute that they have failed to state a claim upon which relief may be granted for three of the eight claims in the Complaint – unjust enrichment, accounting, and damage to commercial reputation.  For the reasons set forth below, they also cannot state claims for the remaining five claims.

### A.    Fraud

The Authors argue that their claim for fraud is one for "civil conspiracy involving fraud" and therefore they do not have to allege direct misrepresentations by Eagle.  However, to succeed on a conspiracy claim, the Authors must allege "an injury caused by an unlawful overt act performed by one of the parties to the agreement."  Opp. to Motion to Dismiss at 6 (quoting *Weishapl v. Sowers*, 771 A.2d 1014, 1023 (D.C. 2001)).  The Authors do not allege any "unlawful overt acts."  That Regnery sold or transferred books to affiliates cannot be an unlawful overt act based on express provisions in the publishing contracts, including the provision that assigns Regnery the exclusive right to publish and market the books and the provision quoted by the Authors in their Complaint that specifically contemplates that books would be sold to "additional" markets.  *See* Compl. ¶ 20.  The Authors have *not* alleged that Regnery sold books to the retail trade and then classified them as sales to additional markets to deprive the Authors of higher royalty payments.  Instead, the Authors merely are complaining that Regnery, as part of

---

[1] That there would be no *res judicata* effect against Regnery if this action were to proceed, as the Authors argue, does not mean that Regnery's rights would not be prejudiced.  A federal court ruling that Regnery breached its contract would adversely affect it and it may never have the opportunity to "re-litigate" the claims if none of the Authors pursue the claims against Regnery.

- 4 -

its marketing campaign for the books, sold books to non-retail markets. That does not amount to "unlawful overt acts."

The Authors' allegations do not meet the requirements of *Bell Atlantic Corp. v. Twombly* where the Supreme Court affirmed a district court's dismissal of an antitrust complaint that did not allege facts "plausibly" suggesting the existence of a conspiracy. 127 S. Ct. 1955, 1974 (2007). In *Twombly*, customers of local telephone and internet companies had alleged that these companies conspired to restrain trade by increasing charges for services in "parallel conduct." *Id.* at 1961-62. Because there were no facts plausibly suggesting the existence of illegal conduct, the case was properly dismissed. *Id.* at 1970-74. Here, the Authors have alleged that Regnery has "diverted" books to affiliates owned by Eagle but they have failed to allege facts that plausibly suggest that this conduct is unlawful. Indeed, the publishing contracts (referenced in the Complaint) acknowledge that certain books will *not* be sold to the retail trade. *See* Compl. ¶ 20. Thus, like *Twombly*, there is nothing to suggest that any illegal or fraudulent conduct was not merely "conceivable" but actually "plausible." *Id.* at 1974.

      B.      <u>Inducement to Breach of Contract and Interference with Contractual Relations</u>

The Authors state, in conclusory fashion, that Regnery breached "the royalty provisions of the publishing contracts." They do not identify how Regnery breached those provisions, nor can they. The royalty provisions do not require Regnery to sell books to certain markets. *See, e.g.*, Ex. 1 to Mot. to Dismiss at ¶ 2. They merely set forth the terms of how the Authors earn royalties on books sold. *Id.* There are no allegations that Regnery did not calculate the correct amount of royalty based upon where a book was sold. The allegations at most establish that Regnery sold books to additional markets that included affiliated organizations (as many other

publishers do). There is nothing in the "royalty provisions" of the contracts or elsewhere that prohibit this conduct. There is simply no factual basis to support a breach of contract.

Without a breach of contract, claims for inducement to breach of contract and interference with contractual relations cannot stand as a matter of law. *See Bannum, Inc. v. Citizens for a Safe Ward Five, Inc.*, 383 F. Supp. 2d 32, 43 (D.D.C. 2005). Moreover, the allegations are insufficient to show that Eagle intentionally procured a breach of contract. *See* Motion to Dismiss at 14-15.

### C. Interference with Prospective Business Advantage

The Authors do not identify any specific prospective business advantage with which Eagle allegedly interfered. Instead, they make the general allegation that Eagle causes the Authors to have lower reported sales figures which affects "prospective business relations between the Authors and other publishers." Opp. at 7-8. Because there are not allegations that Eagle *knew* of the alleged prospective business advantage, the Authors have failed to state a claim. *See Restatement (Second) Torts* § 766B cmt. d ("The interference with the other's prospective contractual relation is intentional if the actor desires to bring it about or if he knows that the interference is certain or substantially certain to occur as a result of his action."); *see also Kirkwood Kin Corp. v. Dunkin' Donuts, Inc.*, No. 94C-03-189, 1997 Del. Super. LEXIS 30, *43-44 (Del. Super. Jan. 29, 1997) (a "specific . . . potential business opportunity" is a "prerequisite" to a claim for interference with prospective business advantage). If the Authors were allowed to proceed based on the bare allegations in the Complaint, then every author in the world could have a potential claim where a publisher was prompted to distribute books through non-retail channels.

D.    <u>Consumer Protection Procedures Act Claim</u>

The Authors contend that Eagle has violated the Consumer Protection Procedures Act by engaging in "a fraudulent conspiracy to harm retail sales." Because the Authors cannot state a claim for a "fraudulent conspiracy" for the reasons set forth above, this claim also should be dismissed.

## **CONCLUSION**

For the foregoing reasons and the reasons set forth in the Motion to Dismiss, the Court should dismiss the case pursuant to Rule 12(b)(6), Rule 12(b)(7), and Rule 19.

Respectfully submitted,

*/s/ Mark I. Bailen*
Bruce W. Sanford (356568)
Mark I. Bailen (459623)
Laurie A. Babinski (976505) (admission pending)
BAKER & HOSTETLER LLP
1050 Connecticut Avenue N.W.
Suite 1100
Washington, D.C. 20036
Tel: (202) 861-1500
Fax: (202) 861-1783
Email: *mbailen@bakerlaw.com*

*Attorneys for Defendant*