**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

_____
                                        )
**JEROME CORSI, et al.,**                )
                                        )
            **Plaintiff,**               )
                                        )
      **v.**                             )   **Case No.  1:07-cv-02004-ESH**
                                        )
**EAGLE PUBLISHING, INC.,**              )
                                        )
            **Defendant.**               )
_____ )

## MEMORANDUM OPINION

Plaintiffs are five authors who have publishing contracts, each of which contains a mandatory arbitration clause, with Regnery Publishing, Inc. ("Regnery").  Dissatisfied with Regnery's marketing and distribution tactics on the grounds that they have allegedly deprived plaintiffs of potential royalty income, plaintiffs have filed suit.  But instead of suing Regnery, the only signatory to the contracts, plaintiffs have sued Regnery's parent company, Eagle Publishing, Inc. ("Eagle"), in a transparent attempt to avoid mandatory arbitration.  In this suit, the authors allege that Eagle "orchestrates and participates" in a "scheme to divert book sales away from retail outlets and to wholly-owned subsidiary organizations within the Eagle conglomerate." (Compl. at 2.)  They assert eight causes of action for 1) fraud; 2) inducement to breach of contract; 3) interference with contractual relations; 4) interference with prospective business advantage; 5) unjust enrichment; 6) accounting; 7) unfair trade practices in violation of the D.C. Consumer Protection Procedures Act, D.C. Code § 28-3901; and 8) damage to commercial reputation.

Defendant has filed a motion to dismiss the complaint under Fed. R. Civ. P. 12(b)(7) for

failure to join Regnery, a necessary and indispensable party under Rule 19.  In the alternative,

defendant moves to dismiss all counts for failure to state a claim under Rule 12(b)(6).

Having considered the arguments of the parties and relevant law, the Court will grant

defendant's motion under Rule 12(b)(7).  The crux of plaintiffs' action is their claim that Regnery

breached the publishing contracts, and since Regnery cannot be joined in this action because of

the arbitration clause, this case must be dismissed.

## BACKGROUND

Plaintiffs each have a written contract with their publisher, Regnery, which is a wholly-

owned subsidiary of Eagle.  Defendant Eagle has no contractual relationship with any plaintiff.

Under plaintiffs' contracts, they have granted and assigned to Regnery "the exclusive right, title

and interest to print, publish and market" the authors' books.  (*See, e.g.*, Def.'s Mot. Ex. 1 ¶ 1.)

The contracts provide for royalties based on sales to the book trade (*i.e.*, retail market), to the

book trade at discounts, and to "additional markets outside regular bookstores or outside of the

book trade . . . ."  (Compl. ¶¶ 19-21; *see, e.g.*, Def.'s Mot. Ex.1 ¶ 2(e).)  The contract fails to

specify how the books are to be marketed or distributed, but sales to "additional markets" yield

lower royalties than retail sales.  (*See, e.g.*, Def.'s Mot. Ex. 1 ¶¶ 2(d), (e).)  Each of the contracts

also contains an arbitration provision that requires that:

> Any controversy or claim arising out of or relating to this
> agreement, the interpretation, implementation, breach or subject
> matter thereof, shall be settled by arbitration in the District of
> Columbia and the rules of the American Arbitration Association.

(Def.'s Mot. Ex. 1 ¶ 14.)

One of the plaintiffs in this case, Richard Miniter, is already involved in an arbitration

proceeding with Regnery as a result of Regnery's claim that Miniter breached the contract by failing to produce a manuscript of a second book for publication.  (*Id.* Ex. 9.)  In response, Miniter filed counterclaims, asserting claims that are virtually identical to those made by plaintiffs here.  Specifically, Miniter contends that Regnery breached the contract by allegedly failing to make royalty payments and by "its improper diversion of books from retail sales and to affiliate and/or subsidiary organizations for no charge, or for a substantially reduced charge, in order to avoid royalty payments."  (*Id.* Ex. 10 ¶ 8.)

In September 2007, Miniter moved to join the remaining four plaintiffs in this case on the grounds that they would be asserting identical claims against Regnery (*id.* Ex. 11), but the arbitrator denied the motion without prejudice on the grounds that the authors' contracts involved separate and distinct facts and that any joinder would unnecessarily delay the proceeding.  (*Id.* Ex. 12 at 1.)  The arbitrator noted, however, that the other four authors were free to initiate their own claims against Regnery.  (*Id.* at 2.)  Consistent with the arbitrator's observation, plaintiffs have indicated in their opposition that "the Authors are not barred from re-filing their arbitration claims against Regnery in a separate proceeding and are preparing to do so."  (Pls.' Opp'n at 3.)

Despite their concession that arbitration is available to address their grievances over Regnery's alleged contractual breaches, plaintiffs have sought out a new forum and a new defendant by filing suit on November 6, 2007, against only Eagle.  They claim that Eagle's marketing and distribution strategies deprive them of potential royalty income by distributing Regnery's books in ways that divert plaintiffs' books away from the traditional retail sales that produce the highest royalties.  Specifically, plaintiffs assert that Eagle distributes Regnery's books by direct mail and over the Internet, gives the books as free gifts to new subscribers of

Eagle's periodicals and donates plaintiffs' books to nonprofits, all of which reduces or eliminates royalties that otherwise could have been realized from retail sales.  (*See* Compl. ¶¶ 14-17.) Plaintiffs also complain that "Eagle's vertically integrated business model exploits, manipulates and defrauds" plaintiffs (*id.* ¶ 18), because "Regnery, at Eagle's direction, funnels books that otherwise would be available for retail sale to its Eagle affiliates under the 'additional markets' clause," and by so doing, "Regnery, at Eagle's direction, undertakes to minimize retail sales . . . , while maximizing sales to 'additional' markets."  (*Id.* ¶¶ 23, 24.)

To stave off defendant's motion to dismiss, plaintiffs argue that Regnery is neither necessary nor indispensable because "the interests of Eagle and Regnery are identical in this litigation," so Eagle can "adequately protect" Regnery's interests involving the publishing contracts.  (Pls.' Opp'n at 4.)  Plaintiffs also assert inconsistently and incorrectly that Regnery will not be prejudiced by this action, since "any findings against Eagle will lack *res judicata* effect against Regnery."  (*Id.*)  Finally, they contend that even if Regnery were deemed to be a "necessary party" within the meaning of Rule 19(a), the action should proceed for equitable reasons under Rule 19(b), because otherwise, they would have no adequate remedy against Eagle. (*Id.* at 4-5.)  None of these arguments has merit.[1]

---

[1] In their response to defendant's motion to dismiss, plaintiffs offer no rebuttal to defendant's argument for dismissal of the claims for unjust enrichment (Count V), accounting (Count VI) and damage to commercial reputation (Count VIII).  These arguments will therefore be treated as conceded, and these counts will be dismissed under Rule 12(b)(6), as well as 12(b)(7).  *See Hopkins v. Women's Div., General Bd. of Global Ministries*, 238 F. Supp. 2d 174, 178 (D.D.C. 2002) (citing *FDIC v. Bender*, 127 F.3d 58, 67-68 (D.C. Cir. 1997) ("It is well understood in this Circuit that when a plaintiff files an opposition to a motion to dismiss addressing only certain arguments raised by the defendant, a court may treat those arguments that the plaintiff failed to address as conceded.").  *See also Day v. D.C. Dep't of Consumer & Regulatory Affairs*, 191 F. Supp. 2d 154, 159 (D.D.C. 2002) ("If a party fails to counter an argument that the opposing party makes in a motion, the court may treat that argument as conceded.").

## ANALYSIS

### I.   Legal Standard under Rule 19

Rule 19 sets forth a two-part test that mandates joinder of a party or dismissal of the suit if the absent party meets the description of a necessary party under Rule 19(a) and is deemed indispensable under Rule 19(b).   *See Cloverleaf Standardbred Owners Ass'n, Inc. v. Nat'l Bank of Washington*, 699 F.2d 1274, 1278-79 (D.C. Cir. 1983).   Under Rule 19(a), a party is necessary if without it (1) "complete relief cannot be accorded among those already parties," or (2) the absent party "claims an interest relating to the subject of the action and is so situated that the disposition of the action in [that party's] absence may" either "(i) as a practical matter impair or impede the person's ability to protect that interest or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of the claimed interest."   Fed. R. Civ. P. 19(a); *see also Cloverleaf Standardbred*, 699 F.2d at 1278-79 (all three criteria for Rule 19(a) were met when plaintiff voluntarily dismissed a claim against one of two parties in order to maintain diversity jurisdiction, leaving only the absent party's bank as defendant, on the grounds that "evidence regarding the nature of the banking relationship between [the absent party] and [the bank] will be central to resolution of this dispute.").   Although only one of the above elements is required to meet the Rule 19(a) test, defendant has succeeded in proving that Regnery is a necessary party under all three criteria.

A court, however, may not "dismiss for nonjoinder simply because an absentee fits Rule 19(a)'s description," *Cloverleaf Standardbred*, 699 F.2d at 1277, because after determining that

an absentee meets the Rule 19(a) criteria, the analysis must proceed to Rule 19(b) to determine

"whether, in equity and good conscience, the action should proceed among the existing parties or

should be dismissed."  Fed. R. Civ. P. 19(b).  Rule 19(b) lists four non-exclusive factors for

consideration, including (1) the "extent a judgment rendered in the [party's] absence might

prejudice that [party] or those already parties;" (2) "the extent to which . . . any prejudice could be

lessened or avoided;" (3) "whether a judgment rendered in the [party's] absence [would] be

adequate;" and (4) "whether the plaintiff would have an adequate remedy if the action were

dismissed for nonjoinder."  Fed. R. Civ. P. 19(b)(1)-(4).  In making this determination, a court has

"substantial discretion in considering which factors to weigh and how heavily to emphasize

certain considerations in deciding whether the action should go forward in the absence of

someone needed for a complete adjudication of the dispute."  *Cloverleaf Standardbred*, 699 F.2d

at 1277.

## A.     Regnery is a "Necessary" Party under Rule 19(a)

Given the allegations in plaintiffs' complaint, it is beyond dispute that Regnery is a

necessary party under any of the three tests set forth in Rule 19(a).  Underlying all of plaintiffs'

claims is their contractual relationship with Regnery and Regnery's alleged breach of its

obligations under these contracts.  Regnery, not Eagle, is the signatory to the contracts, and in the

absence of proof of a breach by Regnery, plaintiffs' claims cannot succeed.  For instance,

plaintiffs cannot pursue a claim for interference with prospective business advantage or

interference with contractual relations without proof of a breach of contract.  *See Bannum Inc. v.*

*Citizens for a Safe Ward Five, Inc.*, 383 F. Supp. 2d 32, 43, 45 (D.D.C. 2005) (claims of tortious

interference with a contract and interference with a prospective economic advantage both require

plaintiff to show that a breach occurred and damage resulted).  Moreover, even though plaintiffs

allege that Regnery acted at "Eagle's direction" (Compl. ¶¶ 23-24), that Regnery's breach of the

royalty provisions was "procured by Eagle" (Pls.' Opp'n at 7), and that Eagle "ratified the false

statements and concealments" of Regnery (Compl. ¶ 29), it is still the case that the gravamen of

plaintiffs' complaint is that Regnery breached its contracts with the authors or made false

statements.[2]  Each of the claims, regardless of the legal labels attached to it, involves Regnery's

conduct under the contracts, and all of the charges against Eagle are inseparable from claims that

plaintiffs are required to raise in an arbitration proceeding.  Thus, each claim in this case

implicates Regnery's conduct under the contracts, and any findings involving these contracts will

necessarily affect Regnery's rights.

The finding that Regnery is a necessary party also finds support in the many court

decisions that have concluded that an absent contracting party, such as Regnery, must be joined

under Rule 19(a).  *See, e.g.*, *Carnero v. Boston Scientific Corp.*, 433 F.3d 1, 18-19 (1st Cir. 2006)

(subsidiary was indispensable where it was a signatory to the agreement, it paid the plaintiff, and

it allegedly breached the contract); *Rivera Rojas v. Loewen Group Int'l, Inc.*, 178 F.R.D. 356, 362

---

[2] Perhaps realizing the difficulty of identifying any misrepresentations by Eagle and not being
able to rely only on alleged misrepresentations by Regnery in a suit against Eagle, plaintiffs have
attempted to recast their fraud claims in Count I by asserting that they have "effectively pled the
elements of civil conspiracy" (Pls.' Opp'n at 6) insofar as Eagle is alleged to have participated in
a fraudulent scheme with its "subsidiaries." (Compl. ¶¶ 27-29.)  By this sleight-of-hand,
plaintiffs now contend that they need not allege any "direct misrepresentations from Eagle . . . ."
(Pls.' Opp'n at 7.)
    Of course, plaintiffs cannot simply rewrite their complaint without filing an amended
complaint, but even if this were possible, any charge of a conspiracy involving Eagle and
Regnery would fail because a single entity consisting of a corporation and its wholly-owned
subsidiary cannot conspire with itself.  *See, e.g.*, *Dickerson v. Alachua County Com'n*, 200 F.3d
761, 767 (11th Cir. 2000); *Travis v. Gary Cmty. Mental Health Ctr., Inc.*, 921 F.2d 108, 110 (7th
Cir. 1990).

(D.P.R. 1998) (subsidiary was a necessary party in a suit against a parent where it "has an interest in the litigation of these issues which pertain to contracts to which [the subsidiary] is a party . . . [and] [i]t should be afforded the opportunity to defend against these allegations."); *Travelers Indem. Co. v. Household Int'l Inc.*, 775 F. Supp. 518, 527 (D. Conn. 1991) ("[P]recedent supports the proposition that a contracting party is the paradigm of an indispensable party."); and *Burger King Corp. v. Am. Nat'l Bank of Trust Co. of Chicago*, 119 F.R.D. 672, 675 (N.D. Ill. 1988) ("If the absent party has a legally protected interest *in* the subject matter of the action - - *i.e.*, he is a party to a contract at issue - - he falls squarely within the terms of Rule 19(a)(2).").

Ignoring this overwhelming weight of authority, plaintiffs instead argue that Eagle will "adequately protect" Regnery's interests because Eagle and Regnery have "identical" interests in this litigation, and "[i]t can easily be concluded here that Eagle will serve as a proxy for Regnery and protect its interests."  (Pls.' Opp'n at 4.)  Regrettably, the only case plaintiffs cite in support of this novel position - - *Nat'l Union Fire Ins. Co. v. Rite Aid*, 210 F.3d 246 (4th Cir. 2000) - - explicitly rejected this very argument, holding that "[t]he prejudice to [parent company] Rite Aid if this suit is not dismissed is particularly strong given that Rite Aid negotiated and entered into the policy, and this suit concerns Rite Aid's conduct" regarding its contract with plaintiff.  *Id.* at 252-53.

Plaintiffs' alternative argument that any findings against Eagle will not bind Regnery because Regnery is not a party to this action is equally unpersuasive, as well as flatly inconsistent with plaintiffs' contention that Eagle can act as Regnery's "proxy."  (Pls.' Opp'n at 4.)  Obviously, since the issue of whether Regnery breached the contracts is central to this case, it may well be that that issue cannot be relitigated in any arbitration proceeding under principles of

collateral estoppel or *res judicata* if Regnery and Eagle are, as plaintiffs seem to assume, in

privity. *See, e.g.*, *Mars Inc. v. Nippon Conlux Kabushiki-Kaisha*, 58 F.3d 616, 619 (Fed. Cir.

1995) (applying the doctrine of claim preclusion based on a finding that the parent and wholly-

owned subsidiary were in privity); *Central Transport, Inc. v. Four Phase Systems, Inc.*, 936 F.2d

256, 260 (6th Cir. 1991) (subsidiaries of parent were in privity for issue preclusion purposes); and

*Astron Industrial Assoc's v. Chrysler Motors Corp.*, 405 F.2d 958, 961 (5th Cir.1968) (a parent

company that later commenced suit against a third party with whom its subsidiary had already

litigated was in privity with wholly-owned subsidiary for purposes of *res judicata*).[3/]

     In sum, Regnery is a necessary party under Rule 19(a), and thus, the Court must now

address whether Regnery is indispensable under Rule 19(b).

### B.    Regnery is "Indispensable" under Rule 19(b)

     Even though Regnery is necessary under Rule 19(a) but cannot be joined because of the

arbitration clause in the contracts, the Court still has the option to decide "whether, in equity and

good conscience, the action should proceed among the existing parties or should be dismissed."

Fed. R. Civ. P. 19(b).  In addressing this issue, plaintiffs rely only on one of the four factors set

forth in Rule 19(b), arguing that this action should be permitted to proceed because "no forum

exists for the Authors to seek relief against Eagle if this action is dismissed."  (Pls.' Opp'n at 5.)

This, however, is not the issue.  Rather, under Rule 19(b)(4), the inquiry is whether plaintiffs

"will have an adequate remedy," regardless of who the defendant is.  *See also Provident*

*Tradesmens Bank & Trust Co. v. Patterson*, 390 U.S. 102, 109 (1968) (directing courts to

---

[3/] Moreover, even if it is arguable that Regnery is not bound by any decision in this case,
Regnery may still have no opportunity to protect its interests if plaintiffs choose not to invoke
their arbitration rights against Regnery.

examine as part of their Rule 19(b) inquiry "whether the plaintiff has an interest in having a

forum," where the strength of this interest "depends on whether a satisfactory alternative forum

exists").

Obviously, plaintiffs have a remedy.  They may pursue arbitration against Regnery, and

they may, as Miniter has already done, raise the very claims they have asserted here.  Even

plaintiffs recognize that they can institute arbitration proceedings against Regnery (and they

suggest that they intend to do so) (*see* Pls.' Opp'n at 3), but they offer *no* explanation for why this

remedy would not be adequate or why the Court should determine that they are being prejudiced

if they are limited to arbitrating against Regnery.

Even though plaintiffs appeal to the Court's equitable powers, each plaintiff voluntarily

entered into a publishing contract with Regnery, and all parties contracted to resolve their

disputes in arbitration, not in court.  Given these facts, there is no legal or equitable reason for the

Court to exercise its discretion under Rule 19(b) to permit the plaintiffs to evade their contractual

obligations by instituting suit against a non-party to the contract.

**CONCLUSION**

For the above reasons, the Court will dismiss with prejudice Counts V, VI and VIII for

failure to state a claim under Rule 12(b)(6) and will dismiss without prejudice the remaining

counts under Rules 12(b)(7).  The defendant's motion [#3] is hereby granted, and the above-

captioned case is dismissed.

_____/s/_____
ELLEN SEGAL HUVELLE
United States District Judge

Date: January 30, 2008